THE STATE OF OHIO, APPELLEE, v. McALLISTER, APPELLANT.

[Cite as State v. McAllister (1977), 53 Ohio App. 2d 176.]

(No. 36114—Decided September 1, 1977.)

*Mr. John T. Corrigan,* for appellee.

*Mr. James French,* for appellant.

PARRINO, J. Appellant Randy McAllister was indicted for grand theft on November 18, 1974. On January 17, 1975, he appeared before the Cuyahoga County Common Pleas Court and entered a plea of no contest to the charge

against him. The court then found appellant guilty of the offense charged. The case was referred to the probation department for a presentence investigation and report. A personal bond of $1,000 was set.

When appellant subsequently failed to appear in court, his bond was forfeited and a capias was issued. The docket shows that on December 1, 1975, appellant was taken into custody and the capias was returned. The bond forfeiture and capias were vacated four days later.

On December 30, 1975, the court granted a motion made by appellant to set aside his previously entered plea of no contest. The case was then set for trial on February 4, 1976. However, the prosecutor was unavailable on that date, and the trial was postponed until February 11. On February 12, 1976, the jury returned a verdict of guilty.

Appellant has brought this appeal from his conviction, and has presented four assignments of error for our review.

In his first assignment of error appellant asserts that the court erred in not granting a motion for dismissal based upon R. C. 2945.71 et seq., the speedy trial statutes. We find no merit in this assignment of error.

R. C. 2945.71 provides that a defendant charged with a felony offense must be tried within 270 days of the date of his arrest, with each day during which the accused is held in jail in lieu of bail on the pending charge to be counted as three days.

On the day trial was to commence, appellant made an oral motion to discharge for failure to comply with this provision. During the voir dire hearing on the motion, defense counsel alleged that appellant had spent in excess of 90 days in jail since the time of his original arrest for the charge involved in this case. Counting each day in jail as three under R. C. 2945.71(D), he alleged that the statutory time for trial had been exceeded. Counsel argued that some of the days spent in jail elapsed before the no contest plea was taken, and some had elapsed after the plea was vacated following appellant's re-arrest on the capias.

Assuming the truth of the allegations,* we are convinced that appellant was not denied his statutory right to a speedy trial. In *State* v. *Gettys* (1976), 49 Ohio App. 2d 241, the Court of Appeals for Seneca County held that the requirements of R. C. 2945.71 *et seq.*, pertaining to time for trial, have no application to the time for trial of a cause in which an original conviction has been reversed and the matter remanded for retrial. We find the reasoning of that case persuasive.

We perceive no difference for purposes of the statute between a retrial following a reversal of a conviction and a trial following the vacation of a conviction based on a no contest plea, as occurred in this case. The provisions of Ohio's speedy trial statutes, R. C. 2945.71 *et seq.*, are directed solely to an original trial following the arrest of a defendant, and have no application to the time within which a defendant must be tried following the vacation of a no contest plea on his own motion.

In this case, appellant was first arrested on October 16, 1974. He entered his plea of no contest on January 17, 1975, or 93 days after the date of his arrest. Appellant has alleged in his brief that he spent 52 days in jail during that period. Assuming that this is true, and giving each day in jail a triple count, only 156 speedy trial days would have elapsed before the no contest plea was entered. Thus, his no contest plea was timely taken within the speedy trial statutes. Appellant's rights under R. C. 2945.-71 *et seq.*, were fulfilled at that point. Following the vacation of the no contest plea, the statutory time limit did not apply.

In the absence of a controlling statutory time period,

---

*At the hearing on the motion to discharge, appellant did not introduce any exhibits or call any witnesses in support of his allegations, but rather relied solely on the arguments of defense counsel. Aside from the bare assertions of counsel, which are not evidence, there is nothing in the record from which this court can determine the amount of time actually spent in jail before trial. However, because the allegations as to the amount of time in jail are not challenged by the prosecutor, we will assume their accuracy for purposes of this appeal.

the only limitations on the time within which appellant had to be brought to trial following the vacation of the no contest plea were the constitutional requirements of the Sixth Amendment of the United States Constitution and Section 10, Article I, of the Ohio Constitution. *Barker* v. *Wingo* (1972), 407 U. S. 514; *State* v. *Gettys, supra; State* v. *Bound* (1975), 43 Ohio App. 2d 44. In light of the fact that only 43 days elapsed between the withdrawal of appellant's no contest plea and his subsequent trial, we find no constitutional violation. We conclude that appellant was timely brought to trial, and that the court properly overruled the motion to discharge.

The remaining assignments of error are:

"II. The Jury verdict is not sustained by sufficient evidence and it is contrary to law.

"III. The Trial Court errored [sic] in not granting the Defendant-Appellant's motion for acquittal based upon the evidence.

"IV. The Trial Court errored [sic] in its charge to the jury."

The assignments of error present generally related issues, and we will treat them together.

The record in this case shows that at about 12:45 a. m. on October 16, 1974, Patrolman Michael Frich and Patrolman Stephen Stropko were riding in their police car on East 130th Street. They turned on to Abell Avenue, and shortly thereafter observed a 1968 Thunderbird run through a red light at the intersection of Abell and East 130th. The officers gave chase. The driver of the Thunderbird apparently lost control of the vehicle, and it crashed into a house. The driver's side door opened and a man exited, tripped and fell. A second man exited through the same door and ran away. The first man crawled underneath the car. Patrolman Frich arrested the first man out of the car. This man was later identified as the appellant. The original ignition had been removed from the Thunderbird, and a second ignition had been installed. The serial number of the Thunderbird was determined to be 8483N122286.

The record further shows that on the evening of October 15, 1974, Mrs. Ruth Scholz and her son John went to Richmond Mall and parked Mrs. Scholz's 1968 Thunderbird in the parking lot. After shopping, they discovered that the car was missing from the parking lot. The serial number of Mrs. Scholz's Thunderbird was 8483N122286, the same as that of the car in which appellant was found a few hours later. Although Mrs. Scholz did not testify, her husband and her son testified that, to their knowledge, she had not given permission to anyone to drive the car on the date in question.

Appellant did not testify at the trial. Nor did he present any evidence which would tend to explain his presence in Mrs. Scholz's car only hours after it was taken from the Richmond Mall.

During its general charge to the jury the court gave the following instruction:

"There was some evidence in this case from which the jury might infer that there was some recently stolen property in the possession of the defendant. Whether or not you so find is entirely up to the jury.

"The law on that is that such, if you so find, possession of stolen property which was recently stolen and in the possession of a person, it tends to establish guilt and is sufficient, itself, for conviction unless it is overcome by other facts and circumstances in evidence so as to raise in the minds of the jury reasonable doubt."

Appellant objected to this instruction, and claims that the court committed reversible error in giving it. He also claims that the evidence is insufficient to sustain the verdict. We disagree.

It has long been established in Ohio that the unexplained possession by a defendant of recently stolen property may give rise to a permissive inference from which a jury may conclude, beyond a reasonable doubt, that the accused is guilty of the theft. *Methard* v. *State* (1869), 19 Ohio St. 363; *State* v. *Brennan* (1949), 85 Ohio App. 175; *Cofield* v. *State* (1933), 14 Ohio Law Abs. 29. *Cf. State* v. *Arthur* (1975), 42 Ohio St. 2d 67. Substantially similar

inferences have long been a part of our legal heritage. *See, Barnes* v. *United States* (1973), 412 U. S. 837. It is our conclusion that this inference, and the instruction thereon, comport with due process.

The trial court instructed the jury in this case that if they found that the appellant was in possession of recently stolen property (*i. e.*, the automobile), that would be a sufficient basis for conviction if not overcome by other facts and circumstances. The court did not tell the jury that they *must* convict if they found that appellant was in possession of recently stolen property, which would have been error. *Methard* v. *State, supra.* Thus, the inference was premissive in nature.

Furthermore, we conclude that this permissive inference is sufficient to satisfy the reasonable doubt standard. That is, we believe that a rational jury could, in fact, properly conclude beyond a reasonable doubt that a person in possession of recently stolen property who offers no explanation of such possession, is guilty of the theft. Accordingly, an instruction on the inference is not error. The fact that the practical effect of the instruction is to shift the burden of going forward with the evidence to the defendants does not render the instruction violative of due process. *Barnes* v. *United States, supra.* Nor does the permissive inference violate appellant's privilege against self-incrimination. *Id.*

It is our conclusion that the instruction concerning the permissive inference in regard to stolen property was proper, and that the evidence as described above, together with the reasonable inferences to be drawn therefrom, sustain appellant's conviction for grand theft.

Appellant also contends that the court erred in giving an instruction on aiding and abetting. We find no error in this regard.

After retiring for deliberation, the jury submitted the following question to the trial court:

"Was the defendant identified as the driver of the T-Bird at the traffic light by any witness, particularly the two patrolmen?"

In response, the trial court correctly told the jurors to rely on their memories to answer the question. However, the court then gave an additional instruction on aiding and abetting as follows:

"The law regards anyone who associates himself with another in the commission of an offense, knowingly, with the purpose to aid and abet the offense, would be equally guilty, regardless of whether or not he personally performed every act constituting the offense.

"So you may refer to my definitions on 'purposely' and 'knowingly' in connection with this additional instruction.

"In the event that the jury should find and be sastisfied [sic] beyond a reasonable doubt that both individuals involved were so engaged in what is often termed aiding and abetting, or complicity in that manner, then it would be—if the jury so found, as I say—it would be irrelevant who was the driver.

"So with that additional instruction, I will allow the jury to return to the jury deliberating room."

We find that the evidence in this case justified the instruction on aiding and abetting. See R. C. 2923.03. Although it would have been preferable for the court to have given the instruction during its general charge, we cannot say that the inclusion of the instruction with the court's answer to a jury question constitutes reversible error.

Finding none of the assignments of error well taken, we affirm the decision of the Common Pleas Court.

*Judgment affirmed.*

STILLMAN and KRUPANSKY, JJ., concur.