DECISION.
{¶ 1} Defendant-appellant Frankie Bates appeals his conviction for one count of receiving stolen property,[1] a fourth-degree felony. After a jury found Bates guilty of the charge, the trial court sentenced him to 15 months in prison. We affirm.
 I. Who's Driving? {¶ 2} In the early morning of April 6, 2004, Norwood Police Officer Mike Price responded to a police radio call concerning a fight on Elm Avenue. A few minutes earlier, Price had heard a different radio call about a brown pickup truck being driven recklessly on Mills Avenue, which was three streets over from Elm.
 {¶ 3} As Officer Price turned onto Elm, he saw several people get into a brown pickup truck and drive off. Believing those people were involved in the fight, Price pursued the truck. The driver of the truck turned into a driveway and drove all the way to the back of a house. The driver then jumped out of the truck and began walking towards Price.
 {¶ 4} Price testified that he had his spotlight on the truck and the driver, in addition to his "takedown lights," which were very bright. Price testified that the driver was about 25 to 30 feet away from him and that he could see him clearly. Price told the driver to stop walking towards him. The driver asked, "Who, me?" and then ran away.
 {¶ 5} Rather than pursuing the driver, Price questioned the other three people in the pickup truck. The three people were Misty Herzner, Melissa Salamander, and Johnny Sparks, who was Bates's cousin. Officer Price testified that Sparks was hesitant at first, but eventually told him that the driver was Frankie Bates, Jr. The women were not able to give Price any information about the driver.
 {¶ 6} Price also noticed that the truck was still running, but that it had no key in the ignition. He testified that, based on his experience, this made him think that the truck was stolen.
 {¶ 7} After Sparks told Price that Bates was the driver, Price went to a police computer and looked at a mug shot of Bates. Price testified that Bates was indeed the driver who had run away from him. Price also testified that, before that evening, he had never met Bates.
 {¶ 8} Officer Price also determined that the owner of the pickup truck was Hassan Kassem. Kassem testified that he had a construction business in Norwood. Kassem had kept the pickup truck in a garage at his business, but the truck had expired license tags, and he no longer used it. Kassem testified that he knew Bates, because Bates had worked for him for a few days several years earlier. But Kassem stated that he had not given Bates or anyone else permission to use the truck. The last time he had seen the truck was on the evening of April 5.
 {¶ 9} Kassem further testified that when he picked the truck up from the police, he could not start it with a key, but had to start it without one. He said that the truck had always started previously with a key.
 {¶ 10} In Bates's defense, Misty Herzner testified that Bates was not the driver of the pickup truck that night. She said that the driver was a man named Shawn whom they had met at a bar earlier that evening. She testified that when questioned by Officer Price, she had told Price that the driver's name was Shawn.
 {¶ 11} Sparks testified that when Officer Price first questioned him about the identity of the driver, he asked, "Was that your buddy Frankie Bates?" Sparks claimed that he told Price it was not, but that Price then told him to say it was Bates, or that he would take Sparks downtown to the Justice Center. Sparks said that, at that point, he told Price that the driver was Bates.
 {¶ 12} Sparks then testified that Bates was actually not the driver, but that Shawn was. Sparks did not know Shawn's last name and could not describe what Shawn looked like or what he was wearing that night. Sparks testified that he had met Shawn at a bar that night, and that Shawn had agreed to give them a ride.
 {¶ 13} Bates testified in his own defense. He denied ever being in possession of a stolen vehicle. He stated that he was with his cousin Sparks earlier in the evening, but that he was not involved in the incident with the stolen pickup truck.
 II. Motion to Suppress {¶ 14} Before trial, Bates filed a motion to suppress Price's identification of him as the driver of the pickup truck. The court overruled the motion. In his first assignment of error, Bates argues that his motion to suppress should have been granted because Officer Price lacked a reasonable suspicion to stop the pickup truck.
 {¶ 15} When considering a ruling on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.[2] But it then must independently determine, without deference to the trial court, whether the facts satisfy the applicable legal standard.[3]
 {¶ 16} The state points out that Bates moved to suppress only the identification testimony of Officer Price, and that he did not challenge whether Price had a reasonable suspicion to stop the pickup truck. The state argues that because Bates failed to raise the issue of reasonable suspicion in his motion to suppress, he has waived any review of the issue. We agree.
 {¶ 17} Under Crim.R. 47, a motion to the court "shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought." The Ohio Supreme Court has stated, "[T]he defendant must make clear the grounds upon which he challenges the submission of evidence. * * * Failure on the part of the defendant to adequately raise the basis of his challenge constitutes a waiver of that issue on appeal."[4]
 {¶ 18} Bates's motion to suppress challenged only the identification testimony against him. There was no mention of a lack of reasonable suspicion for Officer Price to stop the pickup truck that night. Because Bates's motion to suppress failed to challenge whether a reasonable suspicion existed to stop the truck and failed to refer to any facts which, if proved, would have required relief, Bates has waived that issue on appeal.
 {¶ 19} As for the identification testimony, we conclude that the trial court properly denied Bates's motion to suppress.
 {¶ 20} Officer Price testified for the state at the suppression hearing. Similar to his testimony at trial, Price stated that he saw the driver get out of the pickup truck and walk towards him. Price had bright lights on the driver and could see him clearly. After a few words, the driver ran away. After Sparks said that the driver was Bates, Price found a photograph of Bates and confirmed that Bates was the driver who had run away. Sparks testified for the defense that the driver was a person named Shawn and that Officer Price had threatened Sparks into saying the driver was Bates.
 {¶ 21} The trial court found Officer Price "to be believable, credible." On the other hand, the trial court found that Sparks "certainly has a reason to come in here and not tell the truth. The story that he even indicated on the stand is hard for this court to believe." Very strange was Sparks's allegation that Price had told him to name Bates, when Price said that he had never met Bates before.
 {¶ 22} We conclude that there was competent, credible evidence to support the trial court's findings of fact and that, under those facts, the trial court properly denied Bates's motion to suppress Price's identification testimony. Therefore, we overrule Bates's first assignment of error.
 III. Sufficiency and Manifest Weight {¶ 23} In his second assignment of error, Bates argues that his conviction was supported by insufficient evidence and was against the manifest weight of the evidence.
 {¶ 24} In criminal cases, the legal concepts of sufficiency of the evidence and weight of the evidence are distinct.[5] A challenge to the sufficiency of the evidence attacks the adequacy of the evidence presented. Whether the evidence is legally sufficient to sustain a conviction is a question of law.[6] The relevant inquiry in a claim of insufficiency is whether any rational factfinder, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proved beyond a reasonable doubt.[7]
 {¶ 25} A challenge to the weight of the evidence attacks the credibility of the evidence presented.[8] When evaluating the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[9] The discretionary power to reverse should be invoked only in exceptional cases "where the evidence weighs heavily against the conviction."[10]
 {¶ 26} Bates was convicted of receiving stolen property. Under the statute defining the offense, "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."[11]
 {¶ 27} Officer Price testified that Bates was the driver of the pickup truck. But Bates argues that, even if he was the driver, the evidence was insufficient to establish that he either knew or had reasonable cause to believe that the truck was stolen.
 {¶ 28} Kassem, the owner of the truck, testified that he had last seen his truck on the evening of April 5 and that the truck had always needed a key to run. Early in the morning of April 6, according to Price, Bates was driving the truck without a key in the ignition.
 {¶ 29} Bates, because he claimed he was not the driver, offered no explanation for his possession of a recently stolen vehicle. The unexplained possession by a defendant of recently stolen property allows a jury to infer, beyond a reasonable doubt, that the accused knew or had reasonable cause to believe that the property was stolen.[12] Bates just happened to be driving a recently stolen truck with expired plates. And coincidentally that truck belonged to a former employer. And his cousin just happened to identify him as the driver.
 {¶ 30} We conclude that the state presented sufficient evidence from which a rational factfinder could have found beyond a reasonable doubt that Bates knew that the truck was stolen and that he committed the offense of receiving stolen property. Therefore, Bates's conviction was supported by sufficient evidence.
 {¶ 31} After reviewing the entire record, we conclude that the jury did not lose its way or commit a manifest miscarriage of justice in finding Officer Price's testimony more credible than that of the defense witnesses or in finding Bates guilty of receiving stolen property. Therefore, his conviction was not against the manifest weight of the evidence.
 {¶ 32} Accordingly, we overrule Bates's second assignment of error and affirm the trial court's judgment.
Judgment affirmed.
Doan, P.J., and Hildebrandt, J., concur.
[1] R.C. 2913.51(A).
[2] See State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372,797 N.E.2d 71, at ¶ 8.
[3] Id.
[4] See Xenia v. Wallace (1988), 37 Ohio St.3d 216, 218, 524 N.E.2d 889.
[5] See State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541.
[6] Id.
[7] See State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[8] See State v. Thompkins, supra, at 387.
[9] See id.; State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[10] See State v. Martin, supra.
[11] R.C. 2913.51(A).
[12] See State v. McAllister (1977), 53 Ohio App.2d 176, 180,372 N.E.2d 1341; State v. Reinke (Oct. 7, 1992), 9th Dist. No. C.A. No. 2099.