JOURNAL ENTRY AND OPINION
{¶ 1} W.H. appeals from the order of the Cuyahoga County Court of Common Pleas, Juvenile Division, that adjudicated him delinquent on the charge that he engaged in conduct which, if committed by an adult, would have constituted the offense of second-degree felony robbery. He was committed to the Ohio Department of Youth Services for a minimum period of one year. Appellant challenges the sufficiency and manifest weight of the evidence. In addition, appellant claims that the judge erred in allowing the introduction of inadmissable "prior bad acts" evidence, and that he received ineffective assistance of counsel because his lawyer failed to object to the improper testimony. For the reasons set forth below, we affirm.
 {¶ 2} The record reflects that on October 23, 2006, a delinquency complaint was filed in the Juvenile Division of the Cuyahoga County Common Pleas Court, charging appellant with one count of second-degree felony robbery, in violation of R.C. 2911.02(A)(2), and one count of third-degree felony robbery, in violation of R.C. 2911.02(A)(3). An adjudicatory hearing commenced on December 18, 2006. At the start of the hearing, upon the oral motion of the state, the court dismissed the third-degree felony charge.
 {¶ 3} Two witnesses testified for the state. J.W., the 14-year-old victim, testified that he was riding his bicycle with his friend J.R. on October 20, 2006 in the area of West 33rd Street in Cleveland at approximately 5:00 p.m. when appellant and *Page 4 
another male came up to them. J.W. said appellant ran up to him, stopped him, and then put his hands on the handlebars of the bicycle so J.W. could not leave. Appellant told J.W. to give him the bike. J.W. was scared so he took pepper spray out of his pocket and sprayed appellant. J.W. testified that in August of that year he had another bike stolen and started carrying the pepper spray for protection after that incident. He said he was 98% certain that it was appellant who stole his bike in August.
 {¶ 4} Appellant then charged at J.W. and knocked the spray out of his hand, causing it to spray J.W. in the face. Appellant grabbed J.W. and pulled him off the bike and threw him to the ground. J.W. said appellant hit him once and then started to swing at his head but stopped when a security officer from St. Ignatius High School pulled up in a car. The security officer got out of his car to see what was going on, but then got back in the car and started chasing the other boy who had taken J.R.'s bicycle and was fleeing with it. J.W. testified that appellant then took off running and J.W. went home to tell his mother what had happened. J.W. said his mother called the police and filed a report about the incident.
 {¶ 5} J.R., the friend of the victim, testified that on October 20, 2006, he was riding his bicycle with J.W. when appellant and another boy came up to them. J.R. said he was focused on the other boy because that boy was threatening to punch him and was trying to steal his bike. J.R. said he saw appellant holding on to J.W.'s handlebars. He said that after J.W. maced appellant, appellant pulled J.W. off his *Page 5 
bike and "started swinging on him." When the security guard arrived, the other boy took off on J.R.'s bicycle. The other boy was never found and J.R.'s bicycle was not recovered.
 {¶ 6} J.R. testified that he stayed at the scene until the security guard came back and told him to go around the corner. He went around the corner where he saw appellant standing. He and appellant waited with the security guard until the police came. J.R. stated that the security guard told appellant he could leave but appellant stayed there holding his eyes until the police came and EMS treated his eyes.
 {¶ 7} J.R. said while they were waiting, appellant told him that he thought J.W.'s bike was his brother's. J.R. also stated that he heard appellant tell J.W. that the bike was his brother's bike.
 I {¶ 8} In his first assignment of error, appellant asserts that there was insufficient evidence to support the adjudication of delinquency on the charge of robbery. An adjudication of delinquency of a juvenile is reviewed under the same standards as a criminal conviction of an adult. A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. State v. Thompkins (1997), 78 Ohio St.3d 380, 390. An appellate court's function when reviewing the sufficiency of the evidence to support a conviction is to examine the evidence admitted at trial to determine *Page 6 
whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 9} The trial court found appellant delinquent by reason of committing robbery. R.C. 2911.02(A)(2) defines the crime of robbery and provides in pertinent part that "no person, in attempting or committing a theft offense * * * shall * * * inflict, attempt to inflict, or threaten to inflict physical harm on another."
 {¶ 10} Appellant contends the state failed to prove all of the elements of the offense. He argues the state failed to demonstrate the requisite mens rea for a theft adjudication. He also argues the state failed to prove the physical harm element of the offense. Finally, he asserts that even if the theft and physical harm elements were proven, the state failed to prove that appellant committed the physical harm simultaneous to the theft or with the purpose to deprive J.W. of his bicycle. We disagree.
 {¶ 11} When viewed in the light most favorable to the state, the record contains sufficient evidence that appellant inflicted or attempted to inflict physical harm upon J.W. during the commission of a theft offense. J.W. testified on direct examination that appellant attempted to take his bicycle away from him. He stated that appellant *Page 7 
ran up to him, put his hands on the handlebars, and said in a threatening voice, "give me the bike." On cross-examination, when J.W. was asked whether appellant told him that the bike looked like his cousin's bike,[1] J.W. said no. In this case, the victim's testimony, if believed, is sufficient to demonstrate that appellant attempted to commit a theft offense by depriving J.W. of his bicycle.
 {¶ 12} Likewise, J.W.'s testimony is sufficient to demonstrate that appellant inflicted or attempted to inflict physical harm on him while attempting to take his bicycle. Appellant argues that there was only a minor struggle between J.W. and him during which no one suffered physical harm. R.C. 2901.01(A)(3) defines "physical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." J.W. testified that appellant grabbed him, threw him off the bicycle, and hit him. He said appellant tried to hit him a couple of times and was swinging to hit him again when the security guard approached and appellant stopped. From this evidence, the fact-finder could reasonably conclude that appellant inflicted and attempted to inflict physical harm on J.W.
 {¶ 13} We also do not agree with appellant's contention that his use of force after J.W. tried to protect himself and his property negates the robbery offense. The *Page 8 
evidence supports the conclusion that appellant's use of force was part and parcel of his attempt to relieve J.W. of his bicycle.
 {¶ 14} Construing the testimony in a light most favorable to the state, as we are required to do, it is clear there was sufficient evidence which, if believed, demonstrated that appellant committed an act of robbery as defined by R.C. 2911.02(A)(2). Accordingly, we conclude that any rational trier of fact could have found the essential elements of robbery proven beyond a reasonable doubt. Appellant's first assignment of error is overruled.
 II {¶ 15} Having concluded that there is sufficient evidence to support the delinquency adjudication as a matter of law, we next consider appellant's claim that the judgment was against the manifest weight of the evidence. Here the test is much broader. State v. Martin (1983), 20 Ohio App.3d 172. "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." State v. Thompkins, 78 Ohio St.3d 380, 387. "Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." Id.
 {¶ 16} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's [sic] resolution of the *Page 9 
conflicting testimony." Id. at 388. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting State v. Martin, supra.
 {¶ 17} Appellant argues that there was insufficient evidence that he intended to commit a theft offense. He asserts as his defense that he believed J.W. was riding a bicycle that really belonged to someone else and that he was just trying to get it back for the rightful owner. He claims J.R.'s testimony supports this.
 {¶ 18} J.R. testified that while he and appellant were waiting for the police, appellant told him he thought the bicycle was his brother's. On recross-examination, appellant's counsel asked J.R. if he heard appellant give the explanation about thinking the bike was his friend's[2] at the beginning of the incident. J.R. said yes. Appellant also claims that J.R.'s testimony showed appellant did not leave the scene and run away as J.W. had testified. Appellant claims he voluntarily stayed to speak with the police. *Page 10 
 {¶ 19} Any conflicts in the testimony of the two state's witnesses are minor. J.W. testified specifically that appellant did not tell him that he thought the bicycle belonged to someone else. J.R. testified that he heard appellant say the bicycle belonged to his brother. However, J.R. also said more than once that he did not know what was going on between appellant and J.W. because he was focused on the boy who was threatening to punch him and trying to steal his bicycle.
 {¶ 20} Also, J.W. testified that appellant "took off running" after the security guard arrived. Appellant claims that J.R.'s testimony shows he did not leave the scene but remained there voluntarily to speak with police. Actually, according to the testimony of both boys, only J.R. remained at the scene after the incident. He did so at the instruction of the security guard. Then, when the guard came back after failing to find the boy who stole J.R.'s bike, he told J.R. to go around the corner to Lorain Avenue. J.R. said when he got to Lorain Avenue, he saw appellant standing there.
 {¶ 21} We are mindful that the weight to be given the evidence and the credibility of the witnesses are matters primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. In this case, the juvenile court heard the testimony of the two eyewitnesses, evaluated the evidence and concluded that appellant was trying to steal J.W.'s bike, and while doing so, caused or attempted to cause him physical harm. From our review of the record, it does not appear that the fact-finder lost its way. There is competent, credible evidence to support the trial court's judgment. The second assignment of error is overruled. *Page 11 
 III {¶ 22} Appellant's third assignment of error asserts that the trial court erred in admitting hearsay and prior bad acts testimony to his prejudice in violation of Evid.R. 401, 402, 403, and 404. Appellant asserts that J.W.'s testimony that he was 98% certain that it was appellant who stole another bicycle from him a few months earlier, was irrelevant and unduly prejudicial.
 {¶ 23} We first note that the transcript of the trial proceedings shows that appellant did not object to J.W.'s testimony concerning the earlier theft. Thus, appellant did not properly preserve his objection and waived it for purposes of appeal. See State v. Waddell,75 Ohio St.3d 163, 166, 1996-Ohio-100, citing State v. Moreland (1990),50 Ohio St.3d 58, 62. Consequently, we review appellant's assertion under a plain error standard. See Crim.R. 52(B).
 {¶ 24} "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Landrum (1990),53 Ohio St.3d 107, 111, quoting State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Under the plain error standard, an appellant must demonstrate that the outcome of his trial would clearly have been different but for the trial court's errors. Waddell,75 Ohio St.3d at 166, citing Moreland, 50 Ohio St.3d at 63.
 {¶ 25} Evid.R. 404(B) states: *Page 12 
 {¶ 26} "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 27} The state argues that the testimony was not offered to prove appellant acted in conformity with past behavior. The state argues that the prior acts testimony was offered to show that J.W. recognized appellant and to explain what was going through J.W.'s mind at the time appellant grabbed the handlebars of the bicycle. The testimony elicited follows:
 {¶ 28} "Q. What was going through your mind at the time?
 {¶ 29} "A. I was scared.
 {¶ 30} "Q. And is there any particular reason why you were scared?
 {¶ 31} "A. Because he had taken my bike before.
 {¶ 32} "Q. When you say he had taken your bike before when did that occur?
 {¶ 33} "A. I think it was like early August.
 {¶ 34} "Q. Early August. Are you sure it was him?
 {¶ 35} "A. Yes. Because even my friend recognized him.
 {¶ 36} "* * *
 {¶ 37} "Q. So you say you were frightened. What was your action after that? *Page 13 
 {¶ 38} "A. I pulled out my pepper spray and got him in the eyes.
 {¶ 39} "Q. And why is it that you had the spray there in the first place?
 {¶ 40} "A. Because my bike had been stolen before.
 {¶ 41} "* * *
 {¶ 42} "Q. Is there any possible way you can be mistaken about whether or not he was the one who took your bike before?
 {¶ 43} "A. I might be, but I'm like 98% sure it was him."
 {¶ 44} Even assuming the "prior bad acts" testimony was inadmissible, appellant has made no showing of the prejudice required for reversal. "[I]n a bench trial, the court must be presumed to have `considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.'" State v.Richey, 64 Ohio St.3d 353, 357-358, 1992-Ohio-44, quoting State v.Post (1987), 32 Ohio St.3d 380, 384. The trial court explained the reasons for the finding of delinquency and, from a review of the transcript, there is nothing in the record to indicate the court improperly considered the prior bad acts testimony in reaching its decision. Appellant's third assignment of error is overruled.
 IV {¶ 45} Lastly, appellant asserts that he was denied effective assistance of counsel. He bases his argument on his counsel's failure to object to the "prior bad acts" testimony given by J.W. The standard for an ineffective assistance of counsel *Page 14 
claim is set forth in Strickland v. Washington (1984), 466 U.S. 668, where the United States Supreme Court held:
 {¶ 46} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687.
 {¶ 47} The contention that counsel was ineffective by not objecting to the "prior bad acts" testimony lacks merit. As we determined above, even if the evidence should have been objected to and excluded as irrelevant, as appellant argues, the testimony was not so unduly prejudicial as to warrant reversal. There is nothing in the record to show that the trial court, in reaching its decision, improperly relied upon J.W.'s testimony that he was "98% sure" that appellant had taken another bike from him. Counsel's failure to object to this testimony did not deprive appellant of a fair trial, or make the trial results unreliable. There was sufficient, competent, and *Page 15 
credible evidence presented for the trial court to rely upon in making its determination of delinquency. Appellant's final assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas Court — Juvenile Court Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P.J., and MARY J. BOYLE, J., CONCUR
[1] The record is somewhat confusing with regard to whom appellant stated the bike belonged. At different times during questioning, appellant's counsel refers to the bike as belonging to appellant's brother, then to his cousin, and finally to appellant's friend.
[2] See footnote 1. *Page 1