[Cite as *In re B.D.H.*, 2020-Ohio-4879.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| IN RE: | : | CASE NO. CA2020-01-001 |
| B.D.H. | : | O P I N I O N<br>10/13/2020 |
| | : | |
| | : | |
| | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 19-N000796

David C. Wagner, 423 Reading Road, Mason, Ohio 45040, for appellant

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

**M. POWELL, P.J.**

{¶ 1} Appellant, B.D.H., appeals the decision of the Warren County Court of Common Pleas, Juvenile Division, adjudicating him a delinquent child.

{¶ 2} In October 2019 a complaint was filed in the juvenile court alleging that appellant was a delinquent child for commission of multiple acts that would be felony offenses if committed by an adult, to wit: two counts of rape, in violation of R.C.

2907.02(A)(2), and one count of gross sexual imposition, in violation of R.C. 2907.05(A)(1). The sexual acts were alleged to have been committed against his male roommate at a children's group home over the course of three days in April 2019. The matter proceeded to an adjudicatory hearing in December 2019. At the hearing, the state called several witnesses to testify, including, the victim, the adult supervisor ( herein referred to as "house parent") of the group home, two forensic scientists from the Ohio Bureau of Criminal Investigation ("BCI"), a social worker who conducted an intake interview of the victim at the hospital, and the investigating detective from the sheriff's office. In his defense, appellant testified on his own behalf and called the victim's mother and adoptive father to testify.

{¶ 3} At the trial, the victim testified that he was 13 years old at the time the acts took place and that the 16-year-old appellant forced him to engage in three separate sex acts on consecutive nights. On the first night, before the roommates had to turn off their lights for the evening, appellant asked the victim to give him a "hand-job."[1] The victim declined this request. Nevertheless, appellant came over to the victim's side of the bedroom grabbed the victim's arm by the wrist and began to stimulate appellant's penis with the victim's captured hand. The victim testified that after several minutes, appellant ejaculated onto the closet door. Appellant then threatened the victim not to tell anyone and went back to his side of the bedroom.

{¶ 4} On the second night, the victim testified that before "lights-out" appellant asked for a "blow-job."[2] The victim again refused but appellant approached him, told him to close his eyes, grabbed his head with both hands, and then moved his face towards appellant's penis. In fear, the victim put appellant's penis in his mouth. Appellant eventually

---

1. A "hand-job" is the manual masturbation of one's penis by another, usually to ejaculation.

2. The act of fellatio.

ejaculated into the victim's mouth and laughed when he saw the victim gag. After this, appellant repeated the same threats as the previous night then went back to his side of the room.

{¶ 5} On the third night, the victim testified that appellant again asked for either a "hand-job" or a "blow-job" before "lights-out." The victim refused. Appellant moved towards the victim's side of the room and the victim attempted to slide off of his bed to go alert a house parent. However, appellant pinned the victim to the bed with his hands, pulled down the victim's pajama pants and underwear, and inserted his penis into the victim's buttocks. Appellant eventually ejaculated on the victim and afterwards threatened the victim. The victim testified that on none of the three occasions did he consent to engaging in the sexual acts with appellant.

{¶ 6} A few days later, the victim was assigned to a new bedroom. The victim asked appellant's new roommate, one of his friends in the house, if appellant had engaged in any sexual acts with him. The victim revealed to his friend the events that had occurred earlier in the week. Based on this revelation, the sexual acts were then disclosed to the house parents. The house parents contacted the sheriff's office and county children's services. Thereafter, one of the house parents took the victim to the hospital for a medical examination and then to the child advocacy center for a forensic interview. Based on the interview, detectives from the sheriff's office collected samples of suspected bodily fluid stains observed on the wall and closet door of the subject bedroom. The detectives further collected a blanket the victim identified as the one on his bed during the acts charged. The detectives sent this evidence to the BCI for DNA analysis. The BCI forensic scientists found that the closet door sample and several parts of the blanket tested positive for semen. A microscope examination of these samples showed the presence of sperm cells. The forensic scientists then conducted a DNA analysis of the samples and found the DNA profile

from the sperm fraction of several of these samples, including the sample from the closet door, matched appellant's DNA profile. One of the tested samples from the blanket, however, only showed a sperm fraction DNA profile match to the victim.

{¶ 7} Finally, appellant testified on his own behalf. Appellant admitted that the victim performed a sex act on him the first night but denied that it was forced. Appellant further denied that the other two sex acts happened. Appellant explained that the sex act occurred because the victim demanded a "hand-job" from appellant or else the victim would accuse appellant of rape. Therefore, appellant testified that he performed the sex act on the victim in exchange for the victim performing a sex act on him and not accusing him of rape.

{¶ 8} At the conclusion of the hearing, the juvenile court found appellant had committed each of the acts charged and adjudicated appellant a delinquent child. At the dispositional hearing, the juvenile court committed appellant into the legal custody of the Ohio Department of Youth Services for an indefinite term but suspended that commitment on the condition that appellant successfully complete residential treatment at the Warren County Mary Haven Youth Center and comply with the other orders.

{¶ 9} Appellant now appeals raising two assignments of error for review. Both assignments of error will be addressed together.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT ERRED WHEN IT ADJUDICATED THE DEFENDANT DELINQUENT WITH INSUFFICIENT EVIDENCE.

{¶ 12} Assignment of Error No. 2:

{¶ 13} THE TRIAL COURT ERRED WHEN IT ADJUDICATED THE DEFENDANT DELINQUENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 14} In his first and second assignments of error, appellant argues that the trial

court erred adjudicating him delinquent because there was insufficient evidence to prove that he committed the acts charged and the adjudication was otherwise against the manifest weight of the evidence.

{¶ 15} The same standards of review for sufficiency of the evidence and manifest weight of the evidence challenges used in appellate review of adult criminal cases applies to the review of juvenile delinquency adjudications. *In re M.J.C.,* 12th Dist. Butler No. CA2014-05-124, 2015-Ohio-820, ¶ 27-28. A sufficiency of the evidence challenge requires this court to determine whether the state met its burden of production at trial. *State v. A.N.C.,* 12th Dist. Warren No. CA2017-02-012, 2018-Ohio-362, ¶ 8. In conducting this review, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *In re B.T.B.*, 12th Dist. Butler No. CA2014-10-199, 2015-Ohio-2729, ¶ 16. "When evaluating the sufficiency of the evidence, this court must 'defer to the trier of fact on questions of credibility and the weight assigned to the evidence.'" *State v. Z.G.B.*, 12th Dist. Warren No. CA2016-04-029, 2016-Ohio-7195, ¶ 11, quoting *State v. Kirkland,* 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132; *See also State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 162 (witness credibility is not a proper matter for a sufficiency of the evidence review).

{¶ 16} On the other hand, a manifest weight of the evidence challenge "concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other; weight is not a question of mathematics, but depends on its effect in inducing belief." *State v. Olvera-Guillen*, 12th Dist. Butler No. CA2007-05-118, 2008-Ohio-5416, ¶ 11, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In determining whether the adjudication is against the manifest weight of the evidence, an appellate court must

look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*In re D.T.W.*, 12th Dist. Butler No. CA2014-09-198, 2015-Ohio-2317, ¶ 33.

{¶ 17} The juvenile court adjudicated appellant delinquent for committing acts that would be rape and gross sexual imposition, in violation of R.C. 2907.02(A)(2) and 2907.05(A)(1), respectively. R.C. 2907.02(A)(2) provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." "Sexual conduct" includes anal intercourse and fellatio. R.C. 2907.01(A). Fellatio is the act of placing another's mouth or lips in contact with the penis. *In re D.J.*, 12th Dist. Warren No. CA2019-02-010, 2020-Ohio-1317, ¶ 18. R.C. 2907.05(A)(1) provides that "[n]o person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: [t]he offender purposely compels the other person, or one of the other persons, to submit by force or threat of force." "Sexual contact" is the touching of an erogenous zone of another, such as the genitals, for the purpose of sexual arousal or gratification of either person. R.C. 2907.01(B).

{¶ 18} Regarding the sufficiency of the evidence challenge, appellant contends that it was not "reasonable to believe" that appellant committed the act of anal rape because a subsequent medical examination showed no signs of injury. Appellant argues that because there was no corroborating medical evidence of anal rape then there was insufficient evidence. However, this court and other Ohio appellate districts have held that there is no requirement that sexual conduct must be proven by medical or physical evidence. *State v.*

*Boles,* 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 40; *In re N.J.M.,* 12th Dist. Warren No. CA2010-03-026, 2010-Ohio-5526, ¶ 38; *State v. Dade,* 6th Dist. Lucas No. L-19-1024, 2020-Ohio-4545, ¶ 28; *see also State v. Fair,* 11th Dist. Portage No. 2018-P-0027, 2019-Ohio-2508, ¶ 51 (there is no requirement that testimonial evidence of sexual abuse must be corroborated by physical or other evidence). A victim's testimony is sufficient to establish that sexual conduct occurred. *State v. Spencer,* 12th Dist. Warren No. CA2018-08-082, 2019-Ohio-2165, ¶ 24. Therefore, appellant's argument lacks merit.

{¶ 19} Appellant further contends that the evidence was insufficient to adjudicate him delinquent for the anal rape act because it was not reasonable for the juvenile court, as the finder of fact, to believe the victim. Nevertheless, as discussed above, witness credibility is not a proper matter to consider in assessing the sufficiency of the evidence. Accordingly, appellant's claim that the evidence was insufficient to adjudicate him delinquent for the act of anal rape lacks merit and his first assignment of error is overruled.

{¶ 20} Turning to the next assignment of error, appellant claims that the delinquency adjudication was against the manifest weight of the evidence because the victim lacked credibility. Appellant argues that there were inconsistencies between his testimony and the physical evidence. Specifically, appellant points to the victim's denial that he had ever ejaculated on the bed despite the BCI's analysis identifying the victim's DNA profile from sperm cells located on the blanket. Appellant also points to the discrepancy between the victim's description of forcible anal rape compared to the medical record's "normal" finding from the physician's examination.

{¶ 21} As this court has previously explained, "determinations regarding witness credibility, conflicting testimony, and the weight to be given to such evidence are primarily for the trier of fact." *In re N.J.M.,* 2010-Ohio-5526 at ¶ 39. While appellant points out inconsistencies in the evidence, when conflicting evidence is presented at trial, the

adjudication is not against the manifest weight of the evidence because the trier of fact believed the prosecution testimony. *In re D.T.W.*, 2015-Ohio-2317 at ¶ 35. In finding that appellant committed the acts charged, the trial court expressly found appellant lacked credibility.

{¶ 22} After our review of the record, we find the juvenile court did not clearly lose its way and create a manifest miscarriage of justice adjudicating appellant a delinquent child. The victim testified to each distinct sexual act and there was physical evidence to support his testimony. Furthermore, appellant acknowledged at trial that he was bigger than the victim and admitted that the victim knew appellant had been violent in the past. The house parent testified that after the victim disclosed the incidents to her, the victim seemed more withdrawn than normal. The house parent also observed appellant acting nervous when he noticed that the victim was not following the normal routine of the house on the day after the victim disclosed the incidents, which is indicative of a consciousness of guilt. Finally, the medical record noted that "exam findings may be normal following assault or abuse." Accordingly, appellant's delinquency adjudication was not against the manifest weight of the evidence and his second assignment of error is overruled.

{¶ 23} Judgment affirmed.

RINGLAND and PIPER, JJ., concur.